## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**STATE OF NEW MEXICO *EX REL*.**
**GARY KING, ATTORNEY GENERAL,**

    **Plaintiff,**

**V.**                                      **Case No. 13cv00513  WJ/RHS**

**CAPITAL ONE BANK (USA) N.A. and**
**CAPITAL ONE SERVICES, LLC,**

    **Defendants.**

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF

**THIS MATTER** comes before the Court upon Defendants' Motion to Dismiss for Failure to State a Claim for Relief filed August 8, 2013 (**Doc. No. 23**). Having considered the parties' briefs and the applicable law, the Court finds that Defendants' motion is partially well-taken and, therefore, is GRANTED in part and DENIED in part.

### Background

This is an enforcement action brought by the State of New Mexico through Attorney General Gary King (*hereinafter* referred to as "Plaintiff") in regards to allegations of unfair trade practices. This suit is one of nine (9) parallel proceedings that Plaintiff has brought against major credit card companies. The instant suit, as with the other suits, centers around the sale of "payment protection plans" which is a term used to describe services that cancel or suspend a credit card holder's obligation in certain circumstances. Also at issue are Defendants' plans which purport to monitor a consumer's credit report and notify the consumer of any major changes in his or her credit report. Plaintiff alleges that Defendants' actions in selling and

administering these payment protection plans violate the New Mexico Unfair Practices Act ("NMUPA") NMSA (1978) § 57-12-1, *et seq.* and a federal disclosure regulation under the Dodd-Frank Act known as Regulation Z, 12 C.F.R. § 1026.5.  Defendants claim that Plaintiff has failed to sufficiently plead its claims and move for dismissal under Fed. R. Civ. P. 12(b)(6). Additionally, Defendants argue that Plaintiff's NMUPA claims are preempted by federal law.

## Discussion

### I.     Legal Standard

Fed. R. Civ. P. 12(b)(6) allows a defense for "failure to state a claim upon which relief can be granted." In asserting a claim, the claimant must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp.v. Twombly, 550 U.S. 544, 570 (2007). A claim challenged by a 12(b)(6) motion to dismiss does not require detailed factual allegations, but must set forth "more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." Id. at 555  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the [claimant's] complaint alone is legally sufficient to state a claim for which relief may be granted."  Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957); see Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 870 (10th Cir.1992). All well-pleaded factual allegations in the complaint are accepted as true, see Ash Creek Mining Co., 969 F.2d at 870, and viewed in the light most favorable to the nonmoving party, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Fed. R. Civ. P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and

other conditions of mind of a person may be averred generally."  The requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be "simple, concise, and direct, ... and to be construed as to do substantial justice." Fed.R.Civ.P. 8(e), (f); see also Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997). The purpose of Rule 9(b) is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . ." Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 987 (10th Cir.1992) (citation omitted). Simply stated, a complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Lawrence Nat'l Bank v. Edmonds (In re Edmonds ), 924 F.2d 176, 180 (10th Cir.1991).

Defendants argue that the Plaintiff's Complaint should be held to the heightened standard for fraud allegations set forth in Fed. R. Civ. P. 9(b) while Plaintiff argues Rule 9(b) does not apply to claims under the NMUPA.  Although Defendants cite a number of cases holding that claims under consumer protection laws generally are held to the heightened pleading standard, courts in this district have held that Rule 9(b) does not apply to claims under the NMUPA.  See Woodard v. Fid. Nat. Title Ins. Co., CIV 06-1170 RB/WDS, 2007 WL 5173415 (D.N.M. Dec. 4, 2007) (The Tenth Circuit does not impose the Fed.R.Civ.P. 9(b) heightened pleading requirement upon unfair trade practices claims, and New Mexico courts do not require plaintiffs to plead such claims with particularity); Skyline Potato Co., Inc. v. Tan-O-On Mktg., Inc., 879 F. Supp. 2d 1228, 1270-71 (D.N.M. 2012) (same).  Further, Defendants' argument that the cases in this district only address negligent misrepresentations is inapposite because "knowingly" is an element of a NMUPA claim.  See Skyline Potato Co., 879 F. Supp. 2d at 1270-71 ("Unlike a common-law fraud claim, which has an element that the defendant act with intent to deceive and to induce reliance on the misrepresentation, a UPA violation requires only that the defendant act

3

knowingly.") (internal quotation omitted).   Accordingly, this Court will not review Plaintiff's Complaint under the heightened Fed. R. Civ. P. 9(b) standard, but rather will review it under the ordinary standard for motions to dismiss.

## II.    Plaintiff's Complaint Sets Forth Sufficient Facts to Survive a Motion to Dismiss

The NMUPA prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices."   NMSA (1978) § 57-12-3.   In order to state a claim under the NMUPA, the plaintiff must show:

> First, … the party charged made an 'oral or written statement, visual description or other representation that was either false or misleading.'   Second, the false or misleading representation must have been 'knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or ... collection of debts.'   Third, the conduct complained of must have occurred in the regular course of the representer's trade or commerce.   Fourth, the representation must have been of the type that 'may, tends to or does, deceive or mislead any person.'

Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, 112 N.M. 97, 100, 811 P.2d 1308, 1311.

"The 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." Id.

In the instant case, Plaintiff has alleged Defendants knowingly made false or misleading statements regarding their payment protection plans involving the extension of credit in violation of the NMUPA.   See (**Doc. No. 11**), Amended Complaint, ¶ 9.   Defendants are in the business of extending credit to consumers, so these practices occurred in the regular course of Defendants' trade.   Further, Plaintiff alleges that Defendants' statements to their consumers were the kind that "may, tend to, or does, deceive or mislead any person."   Stevenson, 112 N.M. at 100, 811 P.2d 1311.   Thus, Plaintiff has alleged each element of a NMUPA claim.

Plaintiff's allegations are more than a bare bones recitation of the elements of a NMUPA claim.  Plaintiff sets forth in detail the specific products and practices it alleges were a violation of the NMUPA. See **(Doc. No. 11)** ¶¶19-21 (describing products at issue);  ¶¶ 24-36 (describing unfair marketing practices); ¶¶ 37-43 (describing Defendants' unfair handling of the refund process for consumers who have been "slammed"); ¶¶ 52-53 (noting that Defendants target and enroll consumers who either do not qualify for the payment protection plans or will derive minimal benefit from these plans); ¶¶ 62-64 (noting that Defendants do not provide a list of exclusions from the payment protection plans until after the consumers are enrolled). Defendants argue their Motion should be granted simply because the Complaint in the instant case is similar to the complaints filed in the parallel cases.  However, the instant Complaint sets forth facts specific to Defendants in this matter, so the fact that Plaintiff has similar claims against other defendants is not dispositive.   Although Plaintiff has not identified specific consumers who were affected by Defendants' allegedly unfair practices, Plaintiff has sufficiently identified the practices it claims were unfair and identifies specific groups of consumers who were targeted by Defendants and were harmed by Defendants' practices.

Plaintiff also brings a claim for violation of Regulation Z, 12 C.F.R. § 1026.5, which sets forth general disclosure requirements for creditors including requirements for disclosures involving payment protection plans.  In its Complaint, Plaintiff outlined why Regulation Z is applicable to Defendants.  In addition, Plaintiff's Complaint specifically sets forth the required disclosures Defendants allegedly failed to make in violation of Regulation Z.  See **(Doc. No. 11)**, ¶ 96.

Plaintiff's Complaint complies with Fed. R. Civ. P. 8(a)(2).  "Specific facts are not necessary [to comply with Rule 8(a)(2), the complaint must] give the defendant fair notice of what the ... claim is and the grounds upon which it rests."   Burnett v. Mortgage Elec.

Registration Sys., Inc., 706 F.3d 1231, 1235 (10th Cir. 2013).  "Fair notice under Rule 8(a)(2)

depends on the type of case. . ."  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

Given Defendants' familiarity with its own payment protection plans, what Plaintiff has alleged

gives Defendants adequate notice of Plaintiff's claims against them.  It seems the majority of

Defendants' argument regarding Plaintiff's Complaint involves semantics; Defendants object to

Plaintiff's use of the phrase of "upon information and belief" and "may".  In spite of Plaintiff's

word choice, the factual allegations must be accepted as true and viewed in the light most favor

to it.  See Ash Creek Mining Co., 969 F.2d at 870.   Based upon the specific factual allegations

in the Complaint, the Court finds that Defendants were adequately put on notice of Plaintiff's

claims against them concerning the  NMUPA and Regulation Z claims.

### III.    The NMUPA Claim is in Part Preempted by Federal Law

#### A.    Law Regarding Preemption

The Supremacy Clause provides that the laws of the United States "shall be the supreme

Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary

notwithstanding."  U.S. Const. art. VI, cl. 2.  Pursuant to this provision, Congress has the power

to enact statutes that preempt state law.  Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of

Kan., 489 U.S. 493, 509 (1989).  Thus, preemption is ultimately a question of congressional

intent.  See Altria Grp., Inc. v. Good, 555 U.S. 70 (2008).  There are three types of preemption:

(i) "express preemption, which occurs when the language of the federal statute reveals an express

congressional intent to preempt state law;" (ii) "field preemption, which occurs when the federal

scheme of regulation is so pervasive that Congress must have intended to leave no room for a

State to supplement it;" and (iii) "conflict preemption, which occurs either when compliance

with both the federal and state laws is a physical impossibility, or when the state law stands as an

obstacle to the accomplishment and execution of the full purposes and objectives of Congress." US Airways, Inc. v. O'Donnell, 627 F.3d 1318, 1324 (10th Cir. 2010) (citation omitted).

"In 1864, Congress enacted the [National Bank Act "NBA"], establishing the system of national banking still in place today." Watters v. Wachovia Bank, N.A., 550 U.S. 1, 10-11 (2007) (citing National Bank Act, ch. 106, 13 Stat. 99). "In the years since the NBA's enactment, [the Supreme Court] ha[s] repeatedly made clear that federal control shields national banking from unduly burdensome and duplicative state regulation." Id., 550 U.S. at 11. "Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." Id. However, "the States can exercise no control over [national banks], nor in any [way] affect their operation, except in so far as Congress may see proper to permit. Anything beyond this is an abuse, because it is the usurpation of power which a single State cannot give." Id. The ordinary presumption against preemption does not apply to laws which allegedly conflict with the NBA. See Barnett Bank of Marion Cty., N.A. v. Nelson, 517 U.S. 25, 32 (1996) (The Supreme Court has "interpret[ed] grants of both enumerated and incidental powers to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law."). However, the Supreme Court has not interpreted the NBA to completely preempt the entire field of banking. First Nat. Bank in St. Louis v. State of Missouri at inf. Barrett, 263 U.S. 640, 656 (1924).

The Office of the Comptroller of the Currency ("OCC") has enacted a number of regulations that interpret and apply the NBA. "Federal regulations have no less pre-emptive effect than federal statutes." Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982). Congress has expressly recognized the OCC's power to preempt particular state laws by issuing opinion letters and interpretive rulings, subject to certain notice-and-comment

procedures. See 12 U.S.C. § 43; Wachovia Bank, N.A. v. Burke, 414 F.3d 305, 321 (2nd Cir. 2005) (noting that preemption may exist under either the NBA itself or the OCC regulations. Accordingly, the OCC regulations have the same preemptive force as the NBA itself); see also State of Colo. ex rel. Colorado State Banking Bd. v. Resolution Trust Corp., 926 F.2d 931, 946 (10th Cir. 1991) (citation omitted) ("So long as an agency has statutory authority to issue regulations, those regulations will preempt inconsistent state statutes by the simple operation of the Supremacy Clause.").  To the extent that the OCC has chosen not to regulate certain areas, its determination has preemptive effect because "[w]here a comprehensive federal scheme intentionally leaves a portion of the regulated field without controls, then [a] pre-emptive inference can be drawn—not from federal inaction alone, but from inaction joined with action." Puerto Rico Dept. of Consumer Affairs v. Isla Petroleum Corp., 485 U.S. 495, 503 (1988).

## B.    Parties' General Arguments Regarding Preemption

The preliminary question is whether Defendants are correct in asserting that Plaintiff's NMUPA claims, if not preempted, are at least in part governed by the OCC Regulations. Defendants specifically allege that 12 C.F.R. § 7 and 12 C.F.R. § 37 preempt Plaintiff's NMUPA claims.

12 C.F.R. § 37.1 (c) states it "applies to debt cancellation contracts and debt suspension agreements entered into by national banks in connection with extensions of credit they make."[1] Further, the regulation states that debt cancellation and suspension agreements "are governed by this part and applicable Federal law and regulations, and not [] by State law."[2] Id.  The goal of the regulations was to establish "a comprehensive Federal consumer protection scheme" that

---

[1]   This Court will refer to 12 CFR § 37 generally as "Part 37" and will provide a specific cite to a section of Part 37 only where directly quoting the regulation.
[2]   Although Part 37 contains an express preemption clause, "it does not immediately end the [preemption] inquiry because the question of the substance and scope of Congress' displacement of state law still remains." Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008).

"constitute[s] the entire framework for uniform national standards for [debt cancellation contracts] and [debt suspension agreements] offered by national banks." *Debt Cancellation Contracts and Debt Suspension Agreements*, 67 Fed. Reg. 58,962, 58,963, 58,964 (Sept. 19, 2002).  In order to determine whether Plaintiff's NMUPA claims are preempted by federal law, this Court must first determine whether the payment protection plans at issue here are debt cancellation or debt suspension agreements as defined by Part 37.  A debt cancellation contract is defined as "all or part of a loan term or contractual arrangement modifying loan terms under which a bank agrees to cancel all or part of a customer's obligation to repay an extension of credit from that bank upon the occurrence of a specified event. The agreement may be separate from or a part of other loan documents."  12 C.F.R. § 37.2(f).  The regulation goes on to define a debt suspension agreement:

> Debt suspension agreement means a loan term or contractual arrangement modifying loan terms under which a bank agrees to suspend all or part of a customer's obligation to repay an extension of credit from that bank upon the occurrence of a specified event. The agreement may be separate from or a part of other loan documents.

12 C.F.R. § 37.2(g)

Here, Plaintiff's Complaint describes Defendants' payment protection plan as a "product [that] allegedly safeguards consumer's credit card accounts by canceling or temporarily suspending the required minimum monthly credit card payments due in certain [] circumstances, or by permanently canceling accounts in other circumstances."  (**Doc. No. 11**), ¶ 21.  Plaintiff's allegations regarding Defendants' payment protection plan fall squarely within the definition provided by Part 37.  Plaintiff alleges Defendants agree to modify their contractual agreement with a consumer to either suspend or cancel the amount owed "upon the occurrence of a specified event."  *See* 12 C.F.R. § 37.2(f), (g).  Accordingly, Part 37 at least in part governs Plaintiff's NMUPA claims.

12 C.F.R. § 7 ("Part 7") authorizes national banks to exercise their lending powers in connection with non-real estate loans "without regard to state law limitations concerning," among other things, "terms of credit," "disclosure and advertising," and "rates of interest." 12 C.F.R. § 7.4008(d) (4), (8), & (10)[3].  Plaintiff argues that Part 7 is inapplicable to its claims because its claims fall within in the savings clause, 12 C.F.R. § 7.4008(e).  12 C.F.R. § 7.4008(e) provides:

> State laws on the following subjects are not inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent consistent with the decision of the Supreme Court in Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al., 517 U.S. 25 (1996): (1) Contracts; (2) Torts; (3) Criminal law; (4) Rights to collect debts; (5) Acquisition and transfer of property; (6) Taxation; (7) Zoning; and (8) Any other law that the OCC determines to be applicable to national banks in accordance with the decision of the Supreme Court in Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al., 517 U.S. 25 (1996) or that is made applicable by Federal law.

12 C.F.R. § 7.4008(e)

Plaintiff generally alleges that its claims are "precisely the sorts of state law claims that are permitted under the savings clause."  However, Plaintiff fails to identify what portion of the savings clause its claims fall under.  Additionally, there are no categories of exempt laws that Plaintiff's NMUPA claims rationally fall into, because Plaintiff's allegations involve extensions of credit.  See Epps v. JP Morgan Chase Bank, N.A., 675 F.3d 315, 324 (4th Cir.2012) (citation omitted) ("'debt collection' is treated differently from an extension of credit" and [only the former] appears in the savings clause of [12 C.F.R.] § 7.4008(a)(8)").  Therefore, the Court cannot simply accept Plaintiff's general allegation that its claims fall within the savings clause.

---

[3]  It is not disputed that Defendants are part of a national bank and the transactions at issue involve non-real estate loans.

Plaintiff further argues that the only preemption analysis that applies to NBA claims is conflict preemption.  Plaintiff's argument relies on Barnett, 263 U.S. at 656 and a portion of the Dodd Frank Act, 12 U.S.C. § 25b.  However, Barnett does not preclude the application of the other two theories of preemption to banking regulation. Further, 12 U.S.C. § 25b does not state that only conflict preemption analysis applies.  See 12 U.S.C. § 25b(B)(1)(c) (noting that in addition to those state laws preempted under the Barnett conflict preemption analysis, a state law may also be preempted by a provision of Federal law other than title 62 of the Revised Statutes.").  Additionally, the OCC rules are specifically incorporated into the Barnett conflict preemption analysis.  See Interpretative letter, dated May 12, 2011, 2011 WL 10731171 (O.C.C.), 3 (specifically citing Part 7 and noting "thus, under the Barnett preemption provision, precedents that are consistent with the principles of the Barnett conflict preemption analysis are preserved.  These include judicial decisions, interpretations, and the OCC's rules, where preemption was premised on Barnett-based principles of conflict preemption.").  12 U.S.C. § 25b's reference to conflict preemption is not meant to state that no other theories of preemption apply; it is simply meant to clarify that if conflict preemption is used, the standard set forth in Barnett is the correct standard to apply.  See id.  Plaintiff's reliance on the OCC's regulations for its argument that conflict preemption is the only standard is equally misplaced.  12 C.F.R. § 7.4008(e) does not stand for this proposition; it simply states the areas of state law that are not expressly preempted.

Field and express preemption theories continue to apply to NBA regulations even after the enactment of the Dodd Frank Act.  Other "fields" under the NBA besides banking as a whole may be preempted.  See Spinelli v. Capital One Bank, 265 F.R.D. 598, 605 (M.D.Fla.2009) ("the Comptroller of the Currency's extensive framework of regulation indicates an intent to occupy fully the area of debt cancellation and suspension agreements, and therefore amounts to field

preemption."); see also  Thomas v. Bank of Am. Corp., 309 Ga. App. 778, 781, 711 S.E.2d 371, 375 (2011), cert. denied (Jan. 23, 2012) (citing Spinelli and reaching the same conclusion regarding field preemption).  Further, there are a number of instances where the NBA and the regulations enacted to enforce it include express preemption.  See 12 C.F.R. § 37.1 (c) (debt cancellation and suspension agreements "are governed by this part and applicable Federal law and regulations, and not [] by State law."); 12 C.F.R. § 7.4008(d) (allowing national banks to extend non-real estate loans "without regard for state law" in certain areas).  The Court acknowledges there are other courts which have held that express and field preemption do not apply to a preemption analysis of the NBA and its regulations.  See e.g. Agustin v. PNC Fin. Servs. Grp., Inc., 707 F. Supp. 2d 1080, 1094 (D. Haw. 2010) (holding express and field preemption are inapplicable to generally applicable laws regarding unfair business practices); Smith v. BAC Home Loans Servicing, LP, 769 F. Supp. 2d 1033, 1044 (S.D.W. Va. 2011) (citation omitted) ("The NBA ... is structured in such as a way as to only implicate conflict preemption.").  However, the Tenth Circuit has not determined whether field and express preemption apply to the NBA and the regulations accompanying it; therefore, the cases cited by both parties are only persuasive at best. Further, this Court finds that the cases holding express and field preemption do not apply to the NBA and its regulations ignore basic statutory construction.  Part 7 and Part 37 both include provisions which expressly preempt state law in certain areas.  12 C.F.R. § 37.1 (c); 12 C.F.R. § 7.4008(d).  Additionally, the OCC's extensive regulatory framework indicates an intent to occupy the field of debt cancellation and suspension agreements.  In this Court's opinion, the term "field" in the context of field preemption can include smaller subsections of the larger field of banking.  Although the NBA is not intended to preempt the field of banking generally, there is no controlling precedent holding that the smaller field of debt cancellation and suspension agreements is not preempted.  Accordingly, this Court

will consider whether the NBA and the regulations enacting its goals preempts Plaintiff's NMUPA claims under all three theories.[4]

Plaintiff's argument that the NMUPA is a law of general applicability is likewise without practical effect.  It is clear that laws of general applicability can be enforced against national banks "to the extent such laws do not conflict with the *letter* or the general purposes of the NBA."  Watters, 550 U.S. at 11 (emphasis added).  The "letter of the NBA" refers to express preemption.  Plaintiff argues because the NMUPA does not specifically target banks, it is not preempted by the NBA.  However, Plaintiff's argument again ignores the theories of express and field preemption.  Therefore, the fact that the NMUPA is a law of general applicability that does not target national banks or even banks generally is not dispositive of Defendants' preemption argument.

Finally, Plaintiff attempts to distinguish the cases cited by Defendants where courts have held the NBA preempted similar state unfair trade practices claims on the basis that the other cases did not involve the State as the plaintiff.  The Court finds this argument unpersuasive.  The Court is not aware of any case precedent on preemption, and Plaintiff has not cited any, where the identity of the plaintiff determined the issue of whether Congress intended to preempt state law.  However, the Court agrees with Plaintiff that the Attorney General is expressly permitted to enforce a non-preempted state law against a national bank.  See 12 C.F.R. § 7.4000(b).

### C.    Plaintiff's Claims are in part Preempted by the NBA.

In addition to the general arguments regarding preemption, Defendants make specific arguments regarding Plaintiff's individual bases for its NMUPA claim.  Imperative to addressing

---

[4]   Perhaps due to Plaintiff's mistaken belief that only a conflict preemption analysis applies in this instance, Plaintiff repeatedly argued the goals of NMUPA and Part 37 and Part 7 are the same.  However, where there is express preemption or field preemption, courts need not consider whether the goals of the federal and state statutes are in conflict.  Since Plaintiff ignored express and field theories of preemption and focused entirely on conflict preemption, much of Plaintiff's argument is not relevant.

these arguments however, is a proper characterization of Plaintiff's claims. While there are a number of factual allegations in Plaintiff's Complaint, there are only a few activities upon which Plaintiff bases its NMUPA claim.  There are five main theories alleged by Plaintiff in support of its NMUPA claim: 1) Defendants targeted and enrolled consumers in payment protections plans that were ineligible for many of the plans benefits ("ineligible allegations); 2) Defendants' payment protection plans are essentially insurance products ("insurance allegations"); 3) Defendants' practice of targeting consumers who were ineligible for part or all of the particular product's benefits resulted in a gross disparity between the price paid and the benefit received ("gross disparity allegations"); 4) Defendants failed to provide the proper information to their customers  ("non-disclosure  allegations")[5];  5)  Defendants  misrepresented  their  products ("misrepresentation allegations").  Plaintiff and Defendants submitted differing characterizations of these claims.  The Court will address each in turn.

       1.      **Ineligible allegations**

Defendants argue that an attempt to bar them under state law from offering their products or enrolling certain types of consumers in payment protection plans is expressly preempted. Plaintiff counters by arguing that it is not trying to carve out a limitation as to whom Defendants can offer their payment protection plans.  Defendants respond to this argument by asserting Plaintiff "does not deny that federal law preempts any claim that seeks to prohibit national banks from offering payment protection plans to consumers who are ineligible for one or more forms of payment protection plans; instead [Plaintiff] simply denies he has asserted any such claims."  See **(Doc. No. 29)**, Defendants' Reply, p. 9.  Defendants propose that this Court simply find that Plaintiff  has  abandoned  those  claims  and  enter  an  order  prohibiting  Plaintiff  from  further

---

[5] Because Part 7 addresses both disclosure and marketing requirements for national banks, this Court will address Plaintiff's allegations regarding Defendants' marketing practices associated with their payment protection plans with the non-disclosure allegations.

pursuing these claims.  The Court does not consider Plaintiff to have abandoned its ineligible

claims. Therefore, the Court will address the merits of the ineligible claims.

Plaintiff argues its claim is not preempted because it is not arguing that Defendants are

prohibited from offering their payment protection plans, but instead Plaintiff is alleging that

Defendants marketed the payment protection plan in an unfair way.  The Court does not find

Plaintiff's distinction persuasive, especially in light of the clear language in 12 C.F.R. § 37.1 (c)

which explicitly states that debt cancellation and suspension agreements are governed by

"Federal,[. . .] not State law."  See also Spinelli, 265 F.R.D. at 605 ("The National Bank Act and

the OCC's implementing regulations provide that state law on the subject of Debt Agreements is

subject to express preemption.").  Although Plaintiff maintains it is not trying to carve out

categories of customers for which national banks may not offer payment protection plans, its

claims are largely based on its objection to Defendants targeting certain types of customers,

namely the elderly or those who have poor credit, who are essentially ineligible for the benefits

in the plans in which they enrolled.  A number of other courts have found these types of claims

are preempted.  See Denton v. Dep't Stores Nat. Bank, C10-5830RBL, 2011 WL 3298890 (W.D.

Wash. Aug. 1, 2011) (Plaintiff's claims regarding misrepresentation and offering services for

which she was ineligible were preempted); Thomas, 711 S.E.2d at 779 (Part 37 preempts unfair

practices claim that bank "fail[ed] to verify their customers' eligibility for" benefits.).  For the

same reasons, the Court finds that Plaintiff's ineligible claims are expressly preempted by Part

37.[6]

    **2.**    **Insurance allegations**

---

[6] Although this Court's finding on express preemption is dispositive of the ineligible allegations, the Court also
notes that the field of debt cancellation contracts and debt reduction agreements has been preempted.  See Spinelli
265 F.R.D. at 605 ("the Comptroller of the Currency's extensive framework of regulation indicates an intent to
occupy fully the area of debt cancellation and suspension agreements, and therefore amounts to field preemption.");
see also Thomas, 309 Ga. App. at 781 (citing Spinelli and reaching the same conclusion regarding field preemption).

The Court agrees with Plaintiff that while Plaintiff did mention in its Complaint that Defendants' payment protection plans are essentially insurance, this allegation is not actually a basis for Plaintiff's NMUPA claim.  Therefore, the Court will not consider any arguments with regard to preemption based upon the insurance allegations.

### 3.        Gross disparity allegations

Defendants argue that Plaintiff's NMUPA claim is in part preempted because federal law exclusively governs the amount of fees a bank can charge its customer.  Defendants' argument specifically addresses Plaintiff's allegation that, "Defendants' policies and practices associated with the marketing and sale of Capital One's ancillary products result in a gross disparity between the value received by consumers and the price paid."  **(Doc. No. 11)**, ¶ 85.  Plaintiff asserts its gross disparity allegations concerning the fee charged and the benefit to the consumer does not amount to a challenge to the fee itself.

As a preliminary matter, the Court notes federal law exclusively governs the amount of fees charged by national banks.  Part 37 expressly authorizes national banks to "charge a fee" for debt cancellation and suspension agreements. 12 C.F.R. § 37.1(a). "Attendant to [the] authority to charge fees is the authority and discretion to determine the amount and method of charging those fees." Monroe Retail, Inc. v. RBS Citizens, N.A., 589 F.3d 274, 283-84 (6th Cir. 2009). For this and other reasons, courts overwhelmingly hold that the National Bank Act preempts state-law efforts to limit the interest rates and fees that banks may charge for federally authorized banking services. See e.g., Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 11 (2003) (National Bank Act preempts state-law claims directed at national bank's interest charges); Smiley v. Citibank (S. Dakota), N.A., 517 U.S. 735, 739 (1996) (preemption of state-law limits on late fees); Monroe Retail, 589 F.3d at 283-84 (preemption of limits on garnishment fees); Martinez v. Wells Fargo Home Mortgage, Inc., 598 F.3d 549, 555-56 (9th Cir. 2010) (preemption of limits

on underwriting fees); Bank of Am. v. City & Cnty. of San Francisco, 309 F.3d 551, 563 (9th Cir. 2002) (preemption of limits on ATM fees).

The dispute then lies in whether Plaintiff's claims are challenging the amount of the fee charged.[7]  The sole question for this Court is how best to characterize Plaintiff's claims. "If indeed, these claims are challenges to the [fee amount charged], then they are clearly preempted by the NBA."  W. Virginia ex rel. McGraw v. Capital One Bank USA N.A., CIV.A. 3:10-0211, 2010 WL 2901801, *3 (S.D.W. Va. July 22, 2010).   There are a number of courts that hold where a plaintiff is alleging some sort of unfair trade practice associated with the charging of a fee, it is not a challenge to the fee itself and therefore, is not preempted.  See W. Virginia ex rel. McGraw v. Capital One Bank USA N.A., CIV.A. 3:10-0211, 2010 WL 2901801 (S.D.W. Va. July 22, 2010) (holding that the plaintiff's state law claim in regards to fees was not preempted and noting "[w]hen read together with the other paragraphs included in the count, Plaintiff's complaint can only be read to challenge the enumerated practices and procedures as deceptive, fraudulent, or unconscionable under the WVCCPA—not the amount of the fees or interest rate."); Young v. Wells Fargo & Co., 671 F.Supp.2d 1006, 1021 (S.D.Iowa 2009) ("the basis of the alleged excessiveness [in fees] is that Wells Fargo charged fees when they should not, a wholly different claim from a claim that Wells Fargo applied an illegal interest rate. As such, Plaintiffs' claims are not usury claims and are not subject to complete preemption by § 86 of the NBA."); Saxton v. Capital One Bank, 392 F.Supp.2d 772, 783 (S.D.Miss.2005) (citation

---

[7] The Court need not determine whether the fees challenged by Plaintiff are "interest" as defined by the NBA in order to complete its analysis of the issue because Part 37 expressly addresses fees.  However this Court notes that in cases involving similar facts, courts have ruled that the charges associated with payment protection plans are "interest" as defined by the OCC.  See Hood v. JPMorgan Chase & Co., 3:12-CV-565-WHB-LRA, 2013 WL 3946002 (S.D. Miss. July 31, 2013) ("Having considered the pleadings, the Court finds the fees paid for the Payment Protection Plans underlying the MCPA claims in the subject lawsuits would constitute interest as that term is defined by the OCC. Again, the term "interest" is defined to include any payment that compensates a creditor for an extension of credit. Here, the underlying extensions of credit were presumably made pursuant to contractual agreements entered between Defendants and the individual credit card holders.")

omitted) ("With regard to 'interest,' plaintiffs do not challenge the legality of the rate of interest charged by defendants. Rather, they claim that various interest fees were not disclosed, were unwarranted, were based on charges that were themselves improper, and in sum should never have been charged at all.").

There are an equal number of courts reaching a different result holding that claims regarding a gross disparity between the amount charged and the benefit received are a challenge to the fees themselves.  See Hood v. JPMorgan Chase & Co., 3:12-CV-565-WHB-LRA, 2013 WL 3946002 (S.D. Miss. July 31, 2013) (specifically disagreeing with McGraw and finding that Plaintiff's allegations that Defendants' payment protection plans were unregulated in regards to terms, conditions, and fees thereby making them highly profitable for Defendants while offering little or no benefit to consumers were a challenge to the fees themselves and therefore preempted); Hawaii ex rel. Louie v. JP Morgan Chase & Co., 907 F. Supp. 2d 1188, 1212 (D. Haw. 2012) motion to certify appeal granted, 921 F. Supp. 2d 1059 (D. Haw. 2013) (holding Plaintiff's claim that "Defendants allegedly charge Hawai'i consumers significant fees to participate in the various types of payment protection plans even though the consumers may only receive minimal benefits, or may be ineligible to receive any benefits from the plans" was a challenge to the fee itself and was therefore, preempted).

None of the cases cited by Plaintiff or Defendants are binding upon this Court and the Tenth Circuit has yet to express an opinion on this issue.  The Court, however, is persuaded by the line of cases holding that claims similar to the claims asserted by Plaintiff in this instance are a challenge to the fees itself.  Hood and Louie involve claims nearly identical to the claims brought by Plaintiff in this instance.  The Court in Hood directly quoted the Plaintiff's allegations in its opinion:

These actions stem from the Defendants' marketing, selling, and administering to Mississippi consumers fee-based products, which are ancillary to their credit cards. Defendants market such ancillary products as protection for consumers against improper or unauthorized charges on their credit cards, identity theft, and lost or stolen credit cards and/or as providing benefits in the event of unemployment or disability. Each ancillary product is marketed only to the Defendants' current card holders, and the products themselves are attached to the cardholders' specific account at issue. Upon information and belief, when consumers apply for and receive Defendants' credit cards, a process is triggered whereby a consumer can unknowingly and unintentionally sign up to receive ancillary products. Additionally, Defendants often enroll consumers in these products even though the consumers did not assent to pay for them. This process is referred to as "slamming." Enrollment may be based on highly deceptive and misleading telemarketing calls, forged or non-existent mailers or online applications, or nothing at all. In each instance, unknowing consumers are hit with monthly fees without their meaningful consent or understanding that their credit card will be charged for these products. Defendants are in a position to do this because, unlike a typical marketer or seller, they are already the consumer's credit card company and already have their credit card number. Further, for certain types of ancillary products ... that all offer similar coverage (hereinafter collectively referred to as "Payment Protection Plans" or "Plans"), that purport to pay the consumer's required minimum monthly payment for a limited period of time under certain triggering circumstances, such as involuntary unemployment, illness, or changes in family status, thus preventing the account from becoming delinquent, Defendants make no effort to determine whether consumers are even eligible for the benefits at the time of sale. As a consequence, Defendants bill ineligible Mississippi citizens for this coverage, even though their status at the time of enrollment prevents them from receiving benefits under the terms of these Payment Protection Plans.

Hood, *1-2.

Plaintiffs made additional allegations that Defendants committed unfair and deceptive trade practices in violation of state law by charging consumers for the payment protection plans when they either did not want them or could derive no benefit from them. Id., *2. These claims are nearly identical to the claims in the instant matter. See (**Doc. No. 11**).

It is a fine line to say that Plaintiff is precluded from arguing Defendants cannot charge $20 for a service, but then Plaintiff is allowed to argue that Defendants cannot charge $20 for $10 worth of benefit. By arguing that there is a gross disparity between the amount charged and benefit conferred, Plaintiff has impliedly argued that the fees charged are excessive. Taking into

account the holdings of cases involving similar facts and the presumption in favor of preemption

in regards to the NBA, the Court finds that Plaintiff's gross disparity claims under the NMUPA

are expressly preempted by the OCC's regulations regarding the NBA.  The Court notes that

these allegations are also preempted under the theory of field preemption.   See Spinelli, 265

F.R.D. at 605 ("the Comptroller of the Currency's extensive framework of regulation indicates

an intent to occupy fully the area of debt cancellation and suspension agreements, and therefore

amounts to field preemption."); see also Thomas., 309 Ga. App. at 781 (citing Spinelli and

reaching the same conclusion regarding field preemption).

### 4.        Non-disclosure allegations

Part 7 authorizes national banks to make non-real estate loans "without regard to state

law limitations" concerning "[d]isclosure and advertising, including laws requiring specific

statements, information, or other content to be included in credit application forms, credit

solicitations, billing statements, credit contracts, or other credit-related documents." 12 C.F.R. §

7.4008(d)(8).  Part 37 likewise describes the disclosures national banks are required to make in

connection with debt cancellation and suspension agreements. 12 C.F.R. § 37.6; 37.7.  12 C.F.R.

§ 37.6 specifically addresses the types of claims asserted by Plaintiff regarding payment

protection plans.  "Before entering into a contract the bank must obtain a customer's written

affirmative election to purchase a contract and written acknowledgment of receipt of the

disclosures required." This regulation specifically addresses Plaintiff's allegation that Defendants

"enrolled a New Mexico consumer in a payment protection plan [] without his or her assent."

See (Doc. No. 11), ¶ 85. Part 37 also addresses disclosures required for phone calls and mailing

inserts.  12 C.F.R. § 37.7.  The disclosure regulations are subject to the same express preemption

clause as the rest of Part 37.

Several courts have held that Part 37's disclosure regulations preempt state law claims based upon a lack of disclosure.  See Denton, 2011 WL 3298890, at *3 (disclosure claims preempted because "[r]equiring additional disclosures and/or altering their timing would in turn frustrate the purposes of consistency and uniformity and impose state law restrictions on defendant's exercise of its authorized power"); Rose v. Bank of Am. Corp., No. CV 10-5067-VBF, 2010 WL 8435397, at *4 (C.D. Cal. Nov. 5, 2010) (Part 37 preempts state-law disclosure claims relating to payment protection plans); Spinelli, 265 F.R.D. at 605 (same).  Courts have reached similar results in regard to Part 7's disclosure requirements.  Rose v. Chase Bank USA, N.A., 513 F.3d 1032, 1037-38 (9th Cir. 2008) (the NBA preempted the state law disclosure requirements insofar as those requirements apply to national banks); Evans v. Chase Bank USA, N.A., 267 F. App'x 692, 693 (9th Cir. 2008) ("To the extent that plaintiffs assert that [state] law independently require disclosure or notice [by national banks in regard to an extension of credit], the state claims are preempted by the National Bank Act, 12 U.S.C. § 24 (Seventh) and 12 C.F.R. § 7.4008(d)(2)(viii).").

Again, this is an area where the Tenth Circuit has yet to rule.   Based upon the clear language of Part 7 and Part 37 stating that federal law will control regarding disclosures made in connection with non-real estate loans and debt cancellation or suspension agreements, and based upon the Ninth Circuit's holdings in the Rose and Evans cases, this Court finds that Plaintiff's NMUPA claim is preempted to the extent it involves alleged non-disclosures and marketing practices that do not rise to the level of misrepresentation.  Having determined that Plaintiff's NMUPA non-disclosure allegations are expressly preempted, the Court need not address Plaintiff's argument that its NMUPA claims do not stand as an obstacle to the goals of Part 7 and Part 37's disclosure requirements.

**5.    Misrepresentation allegations**

Plaintiff's final theory of recovery is based upon its allegation that Defendants engaged in misrepresentation in regards to their payment protection plans.   The Court reiterates that this section only addresses claims that Defendants affirmatively misrepresented facts about their products to their customers.   Allegations regarding marketing practices generally and non-disclosures were previously addressed.

"A national bank may not engage in any practice or use any advertisement that could mislead or otherwise cause a reasonable person to reach an erroneous belief with respect to information that must be disclosed under this part."  12 C.F.R. § 37.3.  As referenced repeatedly above, Part 37 expressly provides that debt cancellation and suspension agreements are governed by federal, not state law.  12 C.F.R. § 37.1 (c).  Further, the fact that Part 37 contains provisions regarding misrepresentations shows that Congress intended federal law, not state law, to govern misrepresentations involving debt cancellation or suspension agreements.  "Part 37 was intended to provide "the entire framework for uniform national standards for DCCs ... offered by national banks."  67 Fed.Reg. 58962, 58964.  Accordingly, the Court finds that Plaintiff's NMUPA claims based upon misrepresentations regarding debt cancellation or suspension agreements are expressly preempted by Part 37.  As with the non-disclosure allegations, the Court will not address Plaintiff's conflict preemption arguments as its ruling on express preemption is dispositive.

While Part 37 does not address claims not involving debt cancellation or suspension agreements, Part 7 casts a wider net than Part 37 and expressly forbids unfair trade practices in connection with a non-real estate loan.  "A national bank shall not engage in unfair or deceptive practices within the meaning of section 5 of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), and regulations promulgated thereunder in connection with loans made under this § 7.4008."  12 C.F.R. § 7.40089(c).   However, state law regarding misrepresentation is not

expressly preempted. 12 C.F.R. § 7.40089(d) (noting the fields of state law that are preempted, but not including misrepresentations).  Additionally, there is no indication that Part 7 was meant to preempt any specific field because Part 7 addresses banking generally and the NBA does not preempt the entire field of banking.  See Barrett, 263 U.S. at 656 (holding the NBA did not preempt the entire field of banking).  Because express and field preemption do not apply to national banks' misrepresentations generally, the Court turns to Barnett conflict preemption analysis.  See Williamson v. Mazda Motor of Am., Inc., 131 S. Ct. 1131, 1135 (2011) ("[If] the statute's express pre-emption clause cannot pre-empt the [state law] action; but neither can the statute's saving clause foreclose or limit the operation of ordinary conflict pre-emption principles[,]" the Court must apply the appropriate conflict preemption analysis.).

The NMUPA is a state consumer financial law as defined by the Dodd Frank Act.  A state consumer financial law "means a State law that does not directly or indirectly discriminate against national banks and that directly and specifically regulates the manner, content, or terms and conditions of any financial transaction (as may be authorized for national banks to engage in), or any account related thereto, with respect to a consumer."  12 U.S.C. § 25b(a)(2).  State consumer financial laws are preempted under the Barnett conflict analysis "if the State consumer financial law prevents or significantly interferes with the exercise by the national bank of its powers" 12 U.S.C. § 25b(b(1)(B) (citing Barnett, 517 U.S. 25 (1996)).  "State laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its[] lending powers."  Martinez, 598 F.3d at 555.  In fact, the OCC has specifically cautioned national banks that they may be subject to such laws that prohibit unfair or deceptive acts or practices. See OCC Advisory Letter, Guidance on Unfair or Deceptive Acts or Practices, 2002 WL 521380, at *2, *7 n. 2 (Mar. 22, 2002).

A number of courts have found that similar misrepresentation claims are not preempted. See e.g. Jefferson v. Chase Home Finance, No. C 06-6510, 2008 WL 1883484, at *12-14 (N.D.Cal. Apr. 29, 2008) (holding that application of general consumer protection laws against a national bank to bring claims that the bank misrepresented how it would apply prepayments was not preempted by the NBA or OCC regulations); Poskin v. TD Banknorth, N.A., 687 F.Supp.2d 530, 553-54 (W.D.Pa.2009) (adopting the reasoning of Jefferson and holding that a claim brought under the UTPCPL, a general consumer protection statute, that the defendant bank fraudulently misrepresented the plaintiff's employment history and earnings and approved an unauthorized amount of a loan, was not preempted); Baldanzi v. WFC Holdings Corp., No. 07 Civ. 9551, 2008 WL 4924987, at *2 (S.D.N.Y. Nov. 14, 2008) (stating that "[i]n contrast to findings of federal preemption in cases involving specific state regulations that conflict with the NBA, [] consumer protection statutes [] have repeatedly been found by federal courts not to be preempted," and holding that claim that national bank violated general consumer protection statute when it charged interest accrued for one or more days after principal balance on the loan had been paid was not preempted by the NBA or OCC regulations); Young v. Wells Fargo & Co., 671 F.Supp. 1006, 1019-23 (S.D.Iowa 2009) (claims brought under state consumer protection statutes alleging that the national bank defrauded customers by using a computer system that was programmed to automatically charge as many property inspection fees as possible irrespective of their reasonableness held not preempted.); Mann v. TD Bank, N.A., No. 09–1062, 2009 WL 3818128, 2009 U.S. Dist. LEXIS 106015 (D.N.J. Nov. 12, 2009) (holding that claims brought under the New Jersey Consumer Fraud Act regarding a bank's allegedly deceptive advertising was not preempted); White v. Wachovia Bank, N.A., 563 F.Supp.2d 1358 (N.D.Ga.2008) (holding that a claim under the Georgia Fair Business Practices Act that a bank engaged in unfair or deceptive business practices by manipulating the posting of transactions to

an account in order to impose overdraft fees was not preempted).

Here, the NMUPA does not significantly interfere with Defendant's powers as a national bank.   Both the NMUPA and the OCC regulation regarding unfair trade practices base their definition of unfair trade practices on the definition promulgated by the Federal Trade Commission.   See N.M.S.A. §57-12-4 ("It is the intent of the legislature that in construing Section 3 [N.M.S.A. §57-12-3] of the Unfair Practices Act the courts to the extent possible will be guided by the interpretations given by the federal trade commission and the federal courts"); 12 C.F.R. §7.4008(c) ("A national bank shall not engage in unfair and deceptive practices within the meaning of section 5 of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), and regulations promulgated thereunder in connection with loans made under this §7.4008").   The OCC has already determined that this type of regulation does not significantly interfere with national banks' powers by enacting 12 C.F.R. §7.4008(c) prohibiting unfair trade practices. Accordingly, to the extent that Plaintiff is asserting claims of misrepresentation not connected with debt cancellation or suspension agreements, these claims are not preempted.   However, the Court has carefully reviewed Plaintiff's Complaint, specifically Plaintiff's misrepresentation claims, and these allegations all involve debt suspension and cancellation agreements.   Thus, as Plaintiff's misrepresentation claims are presently plead, they are preempted.   However, if Plaintiff has misrepresentation claims not involving debt suspension or cancellation agreements, then Plaintiff has the option of seeking leave of Court to amend its Complaint.

## CONCLUSION

The sufficiency of the allegations set forth in Plaintiff's Complaint are evaluated under Fed. R. Civ. P. 8(a)(2) instead of under the heightened Rule 9(b) standard for fraud claims. Plaintiff has sufficiently pled claims for violation of the NMUPA and Regulation Z.  Plaintiff's NMUPA claim based upon 1) gross disparity; 2) ineligible consumers; 3) misrepresentation; and

4) non-disclosure are preempted by the OCC's regulations interpreting and analyzing the National Bank Act, specifically Part 7 and Part 37.   Defendants mischaracterized Plaintiff's Complaint by alleging Plaintiff's NMUPA claim was in part based upon a violation of New Mexico insurance law.   Because the Court finds that Plaintiff's NMUPA claim does not rely upon New Mexico insurance law, the Court need not further address Defendants' preemption argument on that point.   Accordingly, Count One of Plaintiff's Amended Complaint (NMUPA violation) is dismissed without prejudice.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim (**Doc. No. 23**) is **GRANTED in part and DENIED in part** as set forth in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE