IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO *EX REL*.
GARY KING, ATTORNEY GENERAL,

    Plaintiff,

V.                                                     Case No. 13cv00513  WJ/RHS

CAPITAL ONE BANK (USA) N.A. and
CAPITAL ONE SERVICES, LLC,

    Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSUMER RELIEF CLAIMS PURSUANT TO PRIOR CLASS ACTION SETTLEMENT

**THIS MATTER** comes before the Court upon Defendants' Motion to Dismiss Consumer Relief Claims Pursuant to Prior Class Action Settlement filed August 8, 2013 (**Doc. No. 22**). Having considered the parties' briefs and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is GRANTED.

### Background

This is an enforcement action brought by the State of New Mexico through Attorney General Gary King (*hereinafter* referred to as "Plaintiff") in regards to allegations of unfair marketing practices. This suit is one of nine (9) parallel proceedings that Plaintiff has brought against major credit card companies. The instant suit, as with the other suits, centers around the sale of "payment protection plans" which is a term used to describe services that cancel or suspend a credit card holder's obligation in certain circumstances. Also at issue here are Defendants' plans which purport to monitor a consumer's credit report and notify the consumer

of any major changes in their credit report.  Plaintiff alleges Defendants' actions in selling and administering these payment protection plans violate the New Mexico Unfair Practices Act ("NMUPA") NMSA (1978) § 57-12-1, *et seq.* and a federal disclosure regulation under the Dodd-Frank Act known as Regulation Z, 12 C.F.R. § 1026.5.

**Spinelli Case**

Defendants claim that the class action lawsuit Spinelli v. Capital One Bank (USA) N.A., No. 8:08-cv-132-T33EAJ (M.D. Fla) ("Spinelli") which involved a settlement of claims brought by consumers regarding Defendants' payment protection plans bars Plaintiff's claims for restitution on behalf of individual consumers[1].  The Spinelli complaint accused Defendants of using unfair and deceptive practices to market its payment protection plans, enrolling customers in payment protection plans without their informed consent, and enrolling customers even when they were ineligible for certain payment protection benefits.  The Spinelli plaintiffs asked the court to award money damages and restitution under various state consumer protection laws, including the NMUPA.  This relief was sought on behalf of consumers across the country that had enrolled in Defendants' payment protection plans.  In 2010, Defendants agreed to settle the case after extended settlement negotiations.  Under the resulting settlement, each Spinelli class member was eligible to receive a payment between $15 and $63, with the exact amount depending on factors such as whether the class member had ever received payment protection benefits. In exchange, class members and "all those who claim through them or who assert claims on their behalf (including the government in its capacity as *parens patriae*)" were "deemed to have completely released and forever discharged" Defendants from each of the "Released Claims."  (**Doc. No. 22-2**), Spinelli Final Approval Order, attached as Exhibit B to

---

[1] The Middle District of Florida District Court which originally heard the Spinelli action will hereinafter referred to as the "Spinelli Court."

Defendants' Motion, at 12.4.  Class members were also "forever barred and enjoined from commencing, instituting or maintaining any Released Claims" against the "Released Parties" in the settlement court "or any other forum." Id., at 11. The "Released Claims" include all claims "arising out of or in any way, directly or indirectly, relating to any act, omission, event, incident, matter, dispute, or injury regarding Payment Protection, including, without limitation, the development, sale, pricing, marketing, claims handling, or administration of Payment Protection." Id., at 13.  The settlement class included all Capital One cardholders—including those living in New Mexico—"who enrolled in and were charged for Payment Protection on or after January 1, 2005 through July 31, 2010." Id.

As required by the settlement agreement, Defendants provided individual notice of the settlement to more than eight million individuals who had enrolled in a Capital One payment protection plan.  The Spinelli Court determined that the notice provided by Capital One fully satisfied the requirements of Fed. R. Civ. P. 23.  Although there were several parties who appealed the final settlement order, all of those appeals have been dismissed.  Therefore, the settlement of the Spinelli action is now final.

Defendants assert that Plaintiff's request for "refund of monies paid by New Mexico consumers for these payment protection products" sought under the NMUPA Act and Regulation Z is barred under the theory of res judicata[2].  Defendants' motion does not attack the sufficiency of Plaintiff's other requests for relief, including Plaintiff's request for civil penalties.

**Discussion**

**I.    Legal Standard**

Fed. R. Civ. P. 12(b)(6) allows a defense for "failure to state a claim upon which relief can be granted." In asserting a claim, the claimant must plead "only enough facts to state a claim

---

[2]  The Court determined that Plaintiff's NMUPA claim is preempted in its Memorandum Opinion and Order.  **(Doc. No. 33)**.  Accordingly, Defendants' Motion is moot as to Plaintiff's request for restitution under the NMUPA.

to relief that is plausible on its face." Bell Atl. Corp.v. Twombly, 550 U.S. 544, 570 (2007). A claim challenged by a 12(b)(6) motion to dismiss does not require detailed factual allegations, but must set forth "more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do". Id. at 555  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the [claimant's] complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957); see Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 870 (10th Cir.1992). All well-pleaded factual allegations in the complaint are accepted as true, see Ash Creek Mining Co., 969 F.2d at 870, and viewed in the light most favorable to the nonmoving party, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

"Within the res judicata framework, this court applies federal law to determine the effect of a previous federal judgment, even if that judgment was issued in a case based on diversity jurisdiction."  Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp., 296 F.3d 982, 986 (10th Cir. 2002).  "Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Clark v. Haas Grp., Inc., 953 F.2d 1235, 1238 (10th Cir. 1992) "The fundamental policies underlying the doctrine of res judicata [] are finality, judicial economy, preventing repetitive litigation and forum-shopping, and 'the interest in bringing litigation to an end.'" Plotner v. AT & T Corp., 224 F.3d 1161, 1168 (10th Cir. 2000) (citation omitted).  "Res judicata requires the satisfaction of four elements: (1) the prior suit must have ended with a judgment on

the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit." Nwosun v. Gen. Mills Restaurants, Inc., 124 F.3d 1255, 1257 (10th Cir. 1997).

## II.     Plaintiff's Claims not Barred by Res Judicata

Defendants argue that the Spinelli case bars Plaintiff from asserting its consumer relief claims because the consumers Plaintiff is acting on behalf of in this matter were parties to the settlement agreement reached in the Spinelli case. Before turning to an analysis of the elements of res judicata, the Court will first address the general arguments made by parties.

Plaintiff repeatedly argues that the Attorney General has the unique authority and duty to enforce certain statutory schemes in order to protect the citizens of New Mexico. It argues that the Attorney General represents the interests of the State as a whole as opposed to the interests of any one consumer. The Attorney General certainly has special powers and duties. However, Plaintiff's argument misapprehends what is truly at issue in the present Motion, whether Plaintiff's claims for consumer restitution are barred by res judicata. The Motion does not request that Plaintiff be barred from seeking any other remedy, including potential civil penalties. Courts have repeatedly recognized a distinction for res judicata purposes between an instance where a state agency is seeking to vindicate public interests and when the state agency is seeking restitution on behalf of consumers. Rex, Inc. v. Manufactured Hous. Comm. of State of N.M., Manufactured Hous. Div., 1995-NMSC-023, 119 N.M. 500, 508, 892 P.2d 947, 955 (holding state agency was barred from seeking restitution on behalf of consumer who had already litigated her claims against Defendant); FTC v. AMREP Corp., 705 F.Supp. 119, 124 (S.D.N.Y.1988) (noting that the Federal Trade Commission's suit was barred to the extent that it sought redress for purchasers who had already settled their private claims); EEOC v. American Fed'n of Gov't Employees Local 1617, 657 F.Supp. 742, 750–51 (W.D.Tex.1987) (noting that

because the EEOC's claim was no broader than the private grievant's claim that had already been settled, the EEOC's claim was moot); Brooks v. Stroh Brewery Co., 95 N.C.App. 226, 382 S.E.2d 874, 883–84 (holding that the Commissioner of Labor's action for back pay under the Occupational Safety and Health Act of North Carolina was barred by a private settlement), review denied, 325 N.C. 704, 388 S.E.2d 449 (1989).  Accordingly, Plaintiff's arguments regarding the Attorney General's enforcement powers and duties generally are of no import.

Plaintiff also relies heavily on the Spinelli Court's Order denying Defendants' request for an injunction against similar enforcement actions brought by the Attorney Generals of Hawaii and Mississippi.  The Spinelli Court stated:

> The Court's Order approving the settlement and closing this case did not bind the States of Mississippi and Hawaii. The Attorney General of Mississippi and Hawaii were not defined as class members and did not have an opportunity to participate in the litigation or opt out of the class. It would be a violation of the Due Process clause to now enjoin such Attorney General via the requested injunction.

Spinelli v. Capital One Bank, USA, 8:08-CV-132-T-33EAJ, 2012 WL 3609028, *8  (M.D. Fla. Aug. 22, 2012).

Contrary to Plaintiff's assertions, Defendants' argument before the Spinelli Court is quite different than Defendants' request to this Court.  The Spinelli Court was faced with barring any type of enforcement action by the respective state Attorney Generals, not the discrete issue of whether the Attorney Generals could attempt to recover monetary relief for consumers who were already paid by the Spinelli settlement.  The Spinelli Court's holding rested upon the idea that the subsequent enforcement actions would implicate both private and public interests.  See id.  Here, Defendants are not challenging Plaintiff's broad authority to bring an enforcement action against them, but the narrow issue of whether Plaintiff can attempt to recover damages on behalf of consumers who were already compensated by the Spinelli settlement.  As noted above, this

distinction has important implications for the application of res judicata. Although the Spinelli Court's opinion is not binding upon this Court at any rate, the Court finds the issue the Spinelli Court faced distinguishable from what is at issue in the present motion.

### A.  Judgment on the merits

Plaintiff does not dispute that the settlement in Spinelli was a judgment on the merits. Further it is well established that settlement agreements are final judgments for the purposes of res judicata. Hoxworth v. Blinder, 74 F.3d 205, 208 (10th Cir. 1996) ("Generally, court-approved settlements receive the same res judicata effect as litigated judgments."). Accordingly, the Court will not further address this element of res judicata.

### B.  Parties must be identical or in privity

"As a general rule we apply federal law to the res judicata issue in successive diversity actions, but federal law will incorporate state law when the issue is more distinctly substantive, as with the concept of 'privity.'" Petromanagement Corp. v. Acme–Thomas Joint Venture, 835 F.2d 1329, 1333 (10th Cir.1988). Accordingly, the New Mexico Supreme Court case of Rex, Inc. v. Manufactured Hous. Comm. of State of N.M., Manufactured Hous. Div., 1995-NMSC-023, 119 N.M. 500, 892 P.2d 947, is instructive on the issue of privity[3].

In Rex Inc., a mobile home company sought review of the New Mexico Manufactured Housing Division's ("MHD") order compelling the mobile home company to refund a deposit paid by a consumer who ultimately did not receive the mobile home she ordered from the company. Id., 119 N.M. at 503, 892 P.2d at 950. The mobile home company argued that MHD was collaterally estopped from seeking to hold the company responsible for the deposit because the company had already settled a lawsuit brought by the consumer seeking a refund of the

---

[3]  To the extent that Tenth Circuit law continues to apply, the Tenth Circuit has not yet ruled on the issue of privity between citizens who have already litigated their claims and state agencies which seek to vindicate the citizens' rights in subsequent actions.

7

deposit[4]. Id., 119 N.M. at 504, 892 P.2d at 951. Regarding privity between citizens and state agencies generally, the New Mexico Supreme Court stated, "an agency, enforcing a statutory scheme, is not in privity with the private complainant when the agency is acting to vindicate a broader public interest protected under the statute." Id., 119 N.M. at 508, 892 P.2d at 955. "Therefore, the agency cannot be bound by a private settlement to the extent that the settlement would prevent the agency from protecting that public interest." Id.[5] The Court went on to state, "however, different considerations apply when the agency is acting solely for the private benefit of the complaining individual and is seeking a remedy which only benefits that individual." Id. The Court cited a number of courts that recognize the public versus private interests distinction. See id. (citing FTC v. AMREP Corp., 705 F.Supp. 119, 124 (S.D.N.Y.1988) (noting that the Federal Trade Commission's suit was barred to the extent that it sought redress for purchasers who had already settled their private claims); EEOC v. American Fed'n of Gov't Employees Local 1617, 657 F.Supp. 742, 750–51 (W.D.Tex.1987) (noting that because the EEOC's claim was no broader than the private grievant's claim that had already been settled, the EEOC's claim was moot); Brooks v. Stroh Brewery Co., 95 N.C.App. 226, 382 S.E.2d 874, 883–84 (holding that the Commissioner of Labor's action for back pay under the Occupational Safety and Health Act of North Carolina was barred by a private settlement), review denied, 325 N.C. 704, 388 S.E.2d 449 (1989).

Applying the private versus public distinction to the facts at hand, the New Mexico Supreme Court determined that the benefit of the repayment of any additional portion of the deposit "would inure solely to benefit of [the consumer]." Id., 119 N.M. at 509, 892 P.2d at 956.

---

[4] The consumer and the mobile home company had settled for less than the full amount of the deposit. See Rex, Inc., 119 N.M. at 504, 892 P.2d at 951.
[5] Plaintiff's analysis of Rex, Inc. apparently ended after this section of the Court's opinion, because Plaintiff argues that this case supports a finding that it is not in privity with the consumers in the Spinelli action. Plaintiff's argument ignores the public versus private interests distinction explained by the Court later on in its opinion.

The Court noted, "[t]he public interest in such an award is clearly minimal." Id. Accordingly, the Supreme Court held that the MHD was in privity with the consumer with respect to MHD's claim for the return of the remainder of the deposit and was barred from relitigating the issue of the refund of the deposit by the consumer's settlement with the mobile home company. Id.

The Court is persuaded by the New Mexico Supreme Court's reasoning in Rex, Inc. and the cases therein cited. With respect to the consumer relief claims only, Plaintiff is representing an exclusively private interest. It is not seeking to punish or deter Defendants from similar conduct in the future. Compensation for the individual consumers would "inure solely to the benefit" of the consumers. See id. The fact that Regulation Z also implicates public interests does not mean that with respect to the consumer relief claims Plaintiff is advancing public interests. See Rex, Inc. v. Manufactured Hous. Comm. for the State of New Mexico, 2003-NMCA-134, 134 N.M. 533, 537, 80 P.3d 470, 474 ("The fact that the statute and regulations would have permitted the [agency] to expand the focus of its action to include vindicating a public interest does not mean that it did so in this case."). Therefore, the Court finds, with respect to the consumer relief claims only, that Plaintiff is in privity with the New Mexico consumers who were parties to the Spinelli action.

C.    **Same Cause of Action**

The Tenth Circuit applies the transactional approach to determine what constitutes the same cause of action. See Plotner, 224 F.3d at 1168. "Under this approach, a cause of action includes all claims or legal theories that arise from the same transaction. A contract is generally considered to be a 'transaction' for claim preclusion purposes." Farmer Oil & Gas Properties, LLC v. S. Ute Indian Tribe, 899 F. Supp. 2d 1097, 1113 (D. Colo. 2012) (citation omitted). More specifically, "transaction" "connotes a natural grouping or common nucleus of operative

9

facts." Id. It is well settled that parties cannot avoid the preclusive effects of res judicata by dressing up claims already litigated in new legal theories. See Plotner, 224 F.3d at 1170 ("Inasmuch as the doctrine of res judicata precludes parties from relitigating issues that were or could have been raised, parties cannot defeat its application by simply alleging new legal theories."); Bolling v. City & County of Denver, Colorado, 790 F.2d 67 (10th Cir.1986) (res judicata barred Plaintiff's 42 U.S.C. §§ 1981 and 1983 claims for wrongful termination because of sex and race where Plaintiff failed to raise sex and race discrimination in prior state action when she challenged her employment termination based upon charges that she did not perform her duties satisfactorily or follow supervision).

The Court does not find Plaintiff's argument that the present lawsuit is not based upon the same cause of action as the Spinelli lawsuit convincing. At issue in the Spinelli lawsuit was Defendants' allegedly unfair trade practices, including Defendants' alleged failure to disclose material information regarding their payment protection plans. The plaintiffs in the previous lawsuit had the opportunity to dispute other types of ancillary products beyond the payment protection plans. The dispute in Spinelli concerned only those consumers who actually used Defendants' services. Accordingly, the dispute in Spinelli involved contracts between consumers and Defendants; each of the contracts between the individual consumers and Defendants is considered one transaction for res judicata purposes. See Farmer Oil & Gas Properties, LLC, 899 F. Supp. 2d at 1113. The plaintiffs in the Spinelli lawsuit could have raised their other concerns with Defendants' practices and chose not to. Plaintiff in this matter cannot now say there is a different nucleus of operative facts simply because it is alleging claims under a new legal theory. Additionally, the relief sought in this instance is reimbursement of same fees that were awarded under the Spinelli settlement; this further points to the conclusion

that the instant case is the same cause of action as the one in Spinelli.  The Court finds that the issues raised in the Spinelli action involved the same nucleus of operative facts as those raised by Plaintiff's consumer relief claims in the instant action.

### D.   Full and Fair Opportunity to Litigate in Previous Lawsuit

Res judicata requires that the party had a full and fair opportunity to litigate the claim in the prior suit. See Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1520 (10th Cir.1990) (citation omitted).  In determining whether a party had a full and fair opportunity to litigate the claim, courts consider "any procedural limitations, the party's incentive to fully litigate the claim, and whether effective litigation was limited by the nature or relationship of the parties."  Nwosun, 124 F.3d at 1257-58.  "Essential to the application of the doctrine of res judicata is the principle that the previously unlitigated claim to be precluded could and should have been brought in the earlier litigation." Plotner, 224 F.3d at 1170 (internal quotations and citations omitted).

Having found that Plaintiff is in privity with the New Mexico class members in the Spinelli action, the Court is not persuaded by Plaintiff's argument that Plaintiff itself did not have an opportunity to litigate its claims in the Spinelli action.  If the Court were to accept Plaintiff's argument that the specific party defending against res judicata must have been a party to the previous action in order to have an opportunity to litigate its claims, it would essentially gut the "or in privity" language for the identity of the parties' requirement, thus rendering that element meaningless.  The case law regarding res judicata does not require that Plaintiff have been a party to the previous action in order to have had an opportunity to fully and fairly litigate its claims; Plaintiff's interests were represented by the class members. See Kinslow v. Ratzlaff, 158 F.3d 1104, 1107 (10th Cir. 1998) ("Although the party/privy element and full and fair opportunity element are two separate requirements for issue preclusion, they are closely

related."). Where the parties are in privity, the party in the second lawsuit stands in the shoes of the party in the first lawsuit for res judicata purposes. See Wells v. F.D.I.C., 11-1271-CM, 2012 WL 1900150, *4 (D. Kan. May 24, 2012). Therefore, if the class members had a full and fair opportunity to litigate their claims in the previous action, it as though Plaintiff itself had that same opportunity because the parties are in privity. Accordingly, the Court will consider whether the class members had a full and fair opportunity to litigate their claims in the Spinelli action.

Plaintiff argues it has the exclusive authority to enforce Regulation Z and thus, the Regluation Z claim could not have been raised by the class members in the Spinelli lawsuit. However, courts in the Eleventh Circuit, where the Spinelli action was decided, have recognized a private claim for violations of Regulation Z. See Runkle v. Fed. Nat. Mortgage Ass'n, 905 F. Supp. 2d 1326 (S.D. Fla. 2012) order vacated in part on reconsideration, 12-61247-CIV, 2012 WL 6554755 (S.D. Fla. Dec. 10, 2012) (citing 12 C.F.R. 226.36(c); 15 U.S.C.A. §§ 1639(l )(2), 1640(a).) ("Mortgagor has private right of action under Truth in Lending Act (TILA) for a mortgage lender's failure to provide the mortgagor with the payoff amount of the mortgage loan, in response to the mortgagor's request for that information, in violation of Regulation Z."); Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1380 (11th Cir. 1984) (impliedly recognizing claim made by a private party for violation of Regulation Z by addressing the merits of the claim). Therefore, the class members were not prevented from raising the Regulation Z claim during the Spinelli action. Further, the class members in Spinelli had the same incentive to address the Regulation Z claims, because the claims in Spinelli involved allegations that Defendants failed to make required disclosures. See **(Doc. No. 22-1)**, Spinelli Fourth Amended and Substituted Class Action Complaint, attached as Exhibit A to Defendants' Motion, at ¶¶ 18,

30, 33, 42 (alleging that Defendants failed to disclose material information regarding their payment protection plans). Some of these allegations are identical to the non-disclosure allegations plead by Plaintiff in its Regulation Z claim in the instant case. Compare id. with **(Doc. No. 11)**, at ¶¶ 93-96.

Finally, as a policy matter, the class members who received compensation for their damages arising out of Defendants' allegedly unfair trade practices and failure to disclose information regarding their payment protection plans should not be allowed to receive "double recovery." One court has already addressed this exact issue in a case involving the settlement of a similar class action lawsuit against a credit card company regarding the company's payment protection plans. In its order approving the settlement agreement, the District Court for the Eastern District of Pennsylvania stated:

> Acknowledging that the AGs are not Class members, "Plaintiffs do not purport to release the AGs' claims against HSBC." Because they are not Class members, the AGs may continue to bring claims belonging to their respective states, such as state criminal and regulatory actions. However, the AGs are precluded from bringing claims "in a de facto or de jure representative capacity on behalf of the plaintiffs" in this class action, because doing so would allow Class members to double recover. See In re Baldwin United Corp., 770 F.2d 328, 341 (2d Cir.1985); cf. EEOC v. U.S. Steel Corp., 921 F.2d 489, 496–97 (3d Cir.1990) ("Private litigation in which the EEOC is not a party cannot preclude the EEOC from maintaining its own action because private litigants are not vested with the authority to represent the EEOC ... But when the EEOC seeks to represent grievants by attempting to obtain private benefits on their behalf, the doctrine of representative claim preclusion must be applied."). Class members were adequately represented and given an opportunity to opt out of the settlement. Allowing the Class members to recover under both this settlement and future AG-driven litigations on the basis of the same facts would run counter to well-established class action principles and would discourage settlements, which are strongly favored.

Esslinger v. HSBC Bank Nevada, N.A., CIV.A. 10-3213, 2012 WL 5866074, *7, n.2 (E.D. Pa. Nov. 20, 2012).

Therefore, the Court finds that all of the elements for res judicata are satisfied here and Plaintiff is barred from bringing a claim for compensation on behalf of the consumers who were class members in the <u>Spinelli</u> action.  Accordingly, Plaintiff's consumer relief claim under Count II (Regulation Z) of its Complaint is dismissed with prejudice.

**THEREFORE, IT IS ORDERED**, that Defendants' Motion to Dismiss Consumer Relief Claims Pursuant to Prior Class Action Settlement **(Doc. No. 22)** is hereby **GRANTED.**

_____
UNITED STATES DISTRICT JUDGE